IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Consolidated Civil Action No 13-cv-00573-RBJ-KMT

DONALD THORNTON, individually and as Personal Representative of the
ESTATE OF JEAN THORNTON, and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVITA HEALTHCARE PARTNERS, INC.,

    Defendant.

---

# ORDER

---

## I.   <u>Introduction</u>

Before the Court are six motions to dismiss and a motion to reschedule the trial date and amend the caption, all filed by defendant. All have been fully briefed, and oral argument has not been requested. For the reasons set forth herein the Court grants one motion to dismiss; grants two motions to dismiss in part; denies three motions to dismiss; and grants the motion to reschedule and amend to the extent that the caption is amended and the current trial date is vacated. The Court also establishes a new and final schedule for the remaining five consolidated cases.

## II.   <u>Facts</u>

This case is actually the consolidation of 12 similar cases. Briefly, the cases concern injuries and deaths allegedly caused to individuals suffering from kidney failure who received dialysis treatment at various DaVita dialysis clinics. During dialysis a fluid comprised of a

prescribed substance (the dialysate) and purified water is circulated through the patient's blood to remove toxins, fluids and salt.  One of the dialysates used by DaVita during the period in question was known as "GranuFlo."  Plaintiffs claim that this dialysate caused pH spikes that in turn resulted in serious injuries or deaths.

GranuFlo was manufactured by Fresenius Medical Care, and Fresenius has been the defendant in products liability lawsuits filed elsewhere.  In this case plaintiffs assert that DaVita is also responsible.  DaVita's principal place of business is in Colorado.  None of the plaintiffs is a citizen of Colorado.  Federal jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

### III.   Case History

The original case, 13-cv-00573-RBJ-KMT, was filed on March 6, 2013 by Donald Thornton, individually and on behalf of the estate of his deceased wife.  ECF No. 1.[1]  He purported to represent a class of individuals who had injuries or deaths from the defective dialysate.  Three other cases were filed on the same date, and two more were filed later in 2013.  The six 2013 cases were consolidated for pretrial purposes and for trial.

DaVita filed its first motion to dismiss under Rule 12(b)(6) on August 7, 2013.  ECF No. 56.  After full briefing the Court issued a detailed order on April 9, 2014 dismissing some claims and not others.  ECF No. 69.  The Court held that the fact that DaVita mixed purified water with the dialysate did not make it a "manufacturer," and therefore, that it could not be found liable to the plaintiffs on products liability theories.  *Id.* at 7–10.  Rather, DaVita is a medical service or healthcare provider and, as such, it could be found liable on either a negligence or a fraud-based theory arising from the administration of dialysis treatments in its clinics.  *Id.*

---

[1] ECF numbers in this order will refer to 13-cv-00573-RBJ-KMT unless otherwise indicated.

DaVita filed its second motion to dismiss under Rule 12(b)(6) on August 11, 2014.  By then the complaint had been amended three times, and the operative complaint was the Second Amended Master Consolidated Complaint, ECF No. 82.  There were still only six cases at that time.  The Court issued an order on the second motion on March 23, 2015.  ECF No. 126.

On April 29 and 30, 2015 the Court held two days of hearings on the parties' respective "Daubert" motions and plaintiffs' motion to certify a class.  On May 28, 2015 the Court ruled on the Daubert motions.  ECF No. 163.  On June 18, 2015 the Court issued an order denying class certification.  ECF No. 167.  The Court found that plaintiffs had satisfied the requirements of Rule 23(a).  *Id.* at 13–20.  The Court also found that plaintiffs had satisfied one of the requirements of Rule 23(b), i.e., that "questions of law and fact common to class members predominate over any questions affecting only individual members."  *Id.* at 21–24.  However, the Court found that a class action would not be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at 24–30.

On September 24, 2015 Kathleen and Trevor White filed case 15-cv-02106-RBJ.  Three additional cases (for plaintiffs Bryden, Saldana and Edwards) were filed On December 11, 2015.  Plaintiffs moved to consolidate the four new cases with the previous cases.  ECF No. 175.  DaVita argued that consolidation was no longer appropriate because all but one of the original cases had by then either been settled or otherwise dismissed, and the last of the original cases had been settled in principle.  ECF No. 178.  However, the Court granted consolidation, noting that "it appears that the newer cases all raise the same or similar issues to those raised in the prior cases, and it makes sense to have a judge who is familiar with the issues handle the similar cases."  ECF No. 179.  Two additional cases were filed in 2016, for plaintiff Menchaca on April 12 and for plaintiff Hardin on June 29, 2016.

In sum, the case that generated what has continued (until this order) to be the caption of the consolidated cases, *Thornton v. DaVita*, 13-cv-00573-RBJ-KMT, has long since been dismissed, as have the other five original cases. The remaining six consolidated cases are presently set for trial on May 8, 2017.

### IV.   **Motions to Dismiss.**

DaVita has filed separate Rule 12(b)(6) motions in each of the six "new" cases. But it is important to remember that all of the new plaintiffs, like the earlier plaintiffs, claim to have been treated with a GranuFlo-based dialysate and claim to have experienced serious complications or deaths as a result. Therefore, I will not revisit the following basic holdings in my previous orders: (1) DaVita was a medical service provider, not a manufacturer, and thus does not have exposure on products liability theories; *see* ECF No. 69 at 6–10; (2) plaintiffs may assert (subject to any legal defenses that can be resolved on a motion to dismiss) that in view of DaVita's knowledge and experience in dialysis, including its monitoring of patients during and after treatment, it was negligent to fail to "connect the dots" between the use of a GranuFlo-based dialysate and risks of injury or death faced by patients, *id* at 10; (3) alternatively, plaintiffs may assert (subject to any legal defenses that can be resolved on a motion to dismiss) that DaVita connected the dots but intentionally concealed the facts from patients and their physicians, *id.*; and (4) each plaintiff's claim will be governed by the law of the state in which the patient received treatment at a DaVita clinic, *see* ECF No. 167 at 26.

### A.   **Motion to Dismiss, Case No. 15-cv-02106-RBJ (White), ECF No. 195.**

Kathleen White alleges that she suffered serious complications from her treatment with a GranuFlo-based dialysate in an Arizona clinic on March 6, 2010. ECF No. 1 (of 15-cv-02106-RBJ) at ¶¶64–73. She and her husband sued DaVita on September 15, 2015. They assert six

claims for relief: (1) fraudulent concealment of material facts concerning GranuFlo from the Whites and Mrs. White's physicians; (2) negligence in providing dialysis services; (3) violation of the Arizona Medical Malpractice Act, A.R.S. § 12-561, *et seq.*; (4) loss of consortium; (5) violation of the Arizona Consumer Fraud Act, A.R.S. § 44-152*, et seq*.; and (6) battery.

DaVita's motion to dismiss argues that (1) all claims are barred by a two-year statute of limitations; (2) all asserted claims are subsumed within the Arizona Medical Malpractice Act; (3) the fraud claims were not pleaded with particularity; and (4) DaVita had no duty to warn or disclose because of the learned intermediary doctrine and because those duties belong to the manufacturer of GranuFlo.  ECF No. 195.  In response plaintiffs agree to dismiss the second claim (common law negligence) but otherwise oppose the motion.  ECF No. 204.  In its reply DaVita focuses primarily on its statute of limitations argument but adds a new argument for failure to comply with Arizona's Certificate of Merit requirement.  ECF No. 208 at 10-15.[2]

> Under the Arizona Medical Malpractice Act, a "medical malpractice action" includes
>
> an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services, or other health-related services, without express or implied consent . . . .

A.R.S. § 12-561(2).

Both parties agree that the statute applies to DaVita's actions as a medical services or health care provider.  As such, the act "delineates the contours" of claims that can be brought arising from DaVita's negligence or misconduct in the provision of medical services or health care.  *See Thompson v. Wiener*, No. CV08-991-PHX-GMS, 2008 WL 5068945, at *10 (D. Ariz.

---

[2] The motion to dismiss mentioned the Certificate of Merit issue in a footnote, but it is elevated to prime time in the reply.

Nov. 25, 2008).  All of plaintiffs' claims arise from either negligence or misconduct in the provision of medical or health care services.

    1.  <u>Statute of Limitations</u>.

Actions for medical malpractice as defined in the Arizona Medical Malpractice Act must be brought within two years after the cause of actions accrues.  A.R.S. § 12-542.  For a cause of action to accrue the injured person "must at least possess a minimum requisite of *knowledge sufficient to identify that a wrong occurred and caused injury*."  *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)) (emphasis in original). "[D]eterminations of the time when discovery occurs and a cause of action accrues 'are usually and necessarily questions of fact for the jury.'"  *Id.*

DaVita argues that the Whites should have discovered their cause of action either on March 29, 2012 when the FDA issued a recall of GranuFlo or on June 14, 2012 when the New York Times reported that the FDA was investigating a potentially lethal risk regarding GranuFlo. ECF No. 195 at 7–8.  Plaintiffs counter, "Plaintiff White did not begin to suspect that the cause of her injury could be attributable to DaVita's wrongdoing until she saw an advertisement on-line warning of the dangers of GranuFlo on April 10, 2013."  ECF No. 204 at 39.  Regardless, under any of these three accrual dates, the Whites' suit was filed more than two years later.

However, plaintiffs claim that the suit is not barred because they were members of the putative class represented by the original plaintiff, Donald Thornton.  They argue that the running of the statute was therefore tolled from the time the *Thornton* suit was filed (March 6, 2013) until this Court denied class certification (June 18, 2015).  *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the

applicable statute of limitations as to all asserted members of the class who would have been

parties had the suit been permitted to continue as a class action."). In *Crown, Cork & Seal Co.,*

*Inc. v. Parker*, 462 U.S. 345, 349–52 (1983) the Court clarified that tolling also applies to

members of the putative class who file independent actions rather than intervening in the original

action. If this tolling (which I will refer to as *American Pipe* tolling) applies, then the Whites'

case was timely filed under any of the proposed accrual dates.

A federal court sitting in diversity applies state law for statute of limitations purposes,

including the state's provisions that govern the tolling of the statute. *State Farm Mut. Ins. Co. v.*

*Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008). DaVita argues that *American Pipe* tolling is

not recognized in Arizona, citing *Rader v. Greenberg Traurig, LLP*, 352 P.3d 465 (Ariz. Ct.

App. 2015) and *Newport v. Dell, Inc.*, No. CV-08-0096-TUC-CKJ (JCG), 2008 WL 4347311 (D.

Ariz. Aug. 21, 2008). But this argument misses the point. In *Radar,* the sole issue on appeal

was "whether Arizona should adopt cross-jurisdictional tolling, whereby the filing of a class

action in one jurisdiction tolls the limitations period for claims by class members in a different

jurisdiction during the pending of the class action." 352 P.3d at 435. Similarly, the federal court

in *Newport* held that "it is unlikely that Arizona courts would recognized [sic] the tolling effect

of a related class action filed in another jurisdiction." 2008 WL 4347311 at *5. The present case

does not involve cross-jurisdictional tolling.

Rather, this case involves members of a purported class action who wish to file an

individual action in the same court after class certification was denied. DaVita cites no Arizona

case that either adopts or rejects *American Pipe* tolling in this scenario. In *Albano v. Shea*

*Homes Limited Partnership*, 254 P.3d 360 (Ariz. 2011) the court "assume[d] without deciding

that the timely filing of a class action complaint in Arizona tolls the applicable statute of

limitations for all non-named putative class members from the date the complaint is filed until an order denying class certification is entered." *Id.* at 364. Interestingly, the court held that the pendency of the class action did not toll a statute of repose. *Id.* at 365–67. But the Arizona Medical Malpractice Act does not contain a statute of repose.

I conclude that Arizona, like many other states, would probably toll the running of a statute of limitations from the date of the filing of a putative class action until class certification is denied as against class members who intervene in the same case or file independent actions in the same court after the denial. Accordingly, to the extent the motion to dismiss the White's case is based upon the statute of limitations, it is denied.

2. <u>Substantive Claims</u>.

In this case, as in all of the six remaining cases, plaintiffs assert multiple claims under a variety of labels. But as indicated above, under the Arizona Medical Malpractice Act any action seeking damages for injury or death against a licensed health care provider "based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract" in the rendering of medical services is deemed to be a "medical malpractice action." A.R.S. § 12-561(2). The Act provides, "A medical malpractice action shall not be brought against a licensed health care provider except upon the grounds set forth in § 12-561. A.R.S. § 12-562(A). The Act sets forth the "necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care," i.e.

> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care providers in the profession or class to which he belongs within the state acting in the same or similar circumstances.

> 2. Such failure was a proximate cause of the injury.

A.R.S. § 12-563.

In my view, plaintiffs are not asserting a violation of the Arizona Medical Malpractice Act as such.  Rather, they have brought a "medical malpractice action," and the Act supplies the elements of proof, at least as to any claim of negligence.  This is covered by plaintiff's second claim (negligence), which I do not dismiss.  Therefore, I grant the motion to dismiss the third claim (violation of the Arizona Medical Malpractice Act) but hold that § 12-563 of the Act provides the applicable elements of proof of the negligence claim.

I deny the motion to dismiss plaintiff's fourth claim (loss of consortium), as that claim survives to the extent the underlying claims of Mrs. White survive.  I also deny the motion to dismiss the sixth claim (battery).  The Act expressly precludes actions based upon "assault and battery".  A.R.S. § 12-562(B).  But this case does not involve an assault and battery in the sense of an unwanted touching.  Mrs. White wanted and needed the treatment.  It is a possible battery only in the sense that a GranuFlo dialysate was allegedly used without her informed consent.  As such the Act does not preclude the claim.  *See Duncan v. Scottsdale Medical Imaging, Ltd.*, 70 P.3d 435, 443 (Ariz. 2003).

That leaves the fraudulent concealment and Arizona Consumer Fraud claims.  The coverage of the Arizona Medical Practice Act includes actions for injury or death against a licensed health care provider based on "misconduct."  However, the Act does not define "misconduct" or provide elements of proof other than those set forth in § 12-563.  Neither party has cited any law concerning whether or under what circumstances a fraud claim can be brought against a health care provider.

However, in *Thompson v. Wiener*, No. CV08-991-PHX-GMS, 2008 WL 5068945 (D. Ariz. Nov. 25, 2008), the court considered whether a breach of fiduciary duty claim was preempted by the Arizona Medical Malpractice Act.  Physicians in Arizona owe a fiduciary duty

to their patients.  *Id.* at *9.  Plaintiffs alleged that Dr. Wiener breached a fiduciary duty owed by virtue of medical treatment he provided to them.  Recognizing that the Act does not preempt all claims arising from misconduct by a health care provider (several of which had been asserted against Dr. Wiener in the same case), the court nevertheless held that the breach of fiduciary duty claim, as pled, was preempted because it "involve[d] misconduct in rendering medical services."  *Id.* at *10.

In *Jeter v. Mayo Clinic Arizona*, 121 P.3d 1256 (Ariz. Ct. App. 2005), plaintiffs alleged that the defendant clinic destroyed or lost five pre-embryos that it had agreed to store.  They asserted claims for negligence, breach of fiduciary duty, and breach of a bailment contract.  The court found that, on the limited record before it, "it is possible that the Jeters' breach of fiduciary claim for the loss or destruction of their pre-embryos does not arise out of the rendering of 'medical' or 'health-related' services by Mayo."  *Id.* at 1275.  Therefore, it found that defendant's motion to dismiss based on its argument that the claim was preempted by the Arizona Medical Malpractice Act was premature.  *Id.*  In contrast, it found that the clinic's promise to store the pre-embryos was a "'special contractual agreement' apart from any medical procurement of them" and thus not preempted by the Act.  *Id.* at 1276.

I conclude from those cases as well as the statute that the Arizona Medical Malpractice Act preempts other claims against health care providers arising from the rendering of health care or medical services.  I also find that all of the Whites' claims arise from the rendering of health care or medical services, namely, the dialysis treatment provided to Mrs. White.  Therefore, I conclude that plaintiffs' fraudulent concealment and Arizona Consumer Fraud Act claims cannot proceed as independent claims.

This is not to say that plaintiffs cannot claim (if they have evidence to support it) that DaVita concealed from Mrs. White information about GranuFlo that it had discovered from its monitoring of previous patients' treatments or otherwise. However, that information will have to be provided in the context of the negligence or battery claim. Plaintiffs' first, third, and fifth claims are dismissed.

    3. Particularity.

Insofar as the Court is dismissing the fraud claim as a separate claim, DaVita's argument that plaintiffs failed to plead fraud with particularity is moot.

    4. Duty to Warn or Disclose.

DaVita combines two arguments here. It was not a manufacturer of GranuFlo and thus did not assume the duty to warn applicable to manufacturers. And, the manufacturer's duties to warn and to disclose risks inherent in a prescribed product runs to the physician or other prescribing professional (the learned intermediary), not directly to the patient.

I obviously agree that DaVita was not a manufacturer of GranuFlo. For that reason I rejected plaintiffs' early theories based upon strict liability and express or implied warranties. ECF No. 69 at 6–10. But DaVita had substantial experience and expertise in the provision of dialysis treatments at the time it treated Mrs. White. As the Complaint notes, DaVita touted its "dedicated and highly trained clinical care team," promising that "DaVita's physician partners work closely with their clinical team to identify the dialysis treatment option best suited to your unique health and lifestyle needs." *See* ECF No. 1 (in 15-cv-02106-RBJ) at ¶60. DaVita similarly touted the DaVita Quality Index as a "benchmarking tool created by our Physician Counsel to measure each dialysis center's outcomes against company-wide performance." *Id.* at ¶61.

DaVita had a duty "to exercise that degree of care, skill and learning expected of a reasonable, prudent health care providers . . . acting in the same or similar circumstances." A.R.S. § 12-563.  Those circumstances included DaVita's knowledge of and experience with dialysates, including GranuFlo.  The circumstances also included what could reasonably be gleaned by monitoring its patients during and after treatments.  DaVita cannot put a substance in a patient's body without regard to risks about which it knew or reasonably should have known.  Whether the duty to disclose such knowledge runs directly to the patients or indirectly to the patients through their physicians, or as I conclude, to both is largely immaterial.  The bottom line is that DaVita cannot put its head in the sand.  I feel reasonably certain that DaVita does not believe otherwise, regardless of theories in a legal case.

    5.  <u>Certificate of Merit</u>.

    In its first motion to dismiss the original six cases DaVita pointed out that Arizona law requires a medical malpractice plaintiff to certify in a written statement served with the claim whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim.  ECF No. 56 at 37.  *See* A.R.S. § 12-2603(A).  One of the original plaintiffs, Armando Moreno, was treated in a DaVita clinic in Arizona, but plaintiff argued that the requirement does not apply to claims sounding in strict liability.  In my order on the motion to dismiss I granted plaintiffs leave to file the pertinent paperwork in the *Moreno* case in view of the Court's clarification that plaintiffs' claims against DaVita are not products liability claims.  ECF No. 69 at 13.

    In its motion to dismiss the present case DaVita noted in a footnote that the Whites' certificate of merit was procedurally defective because it was filed approximately two weeks after their complaint was filed.  ECF No. 195 at 3 n.4.  However, DaVita did not at that time

suggest that the complaint should be dismissed on that basis.  Plaintiffs did not deny that the certificate was late but noted authority suggesting that dismissal is not an appropriate remedy.  ECF No. 204 at 26 n.18.  In its reply brief DaVita argues that the complaint should be dismissed for an additional procedural reason, namely, that plaintiffs failed to file a "preliminary expert opinion affidavit with their initial disclosures as required by A.R.S. § 12-2603(B)."  ECF No. 208 at 14–15.

DaVita states that plaintiffs' disclosures were served on April 28, 2016.  *Id.*  Since the motion to dismiss was filed on April 25, 2016, ECF No. 195, I can't fault DaVita for not raising the preliminary expert opinion affidavit matter at that time.  Moreover, I note that plaintiffs recognized their obligation to file such an affidavit with their disclosures when they filed their certificate of merit.  *See* ECF No. 10 (in 15-cv-2106-RBJ).  However, because this issue was raised for the first time in the reply brief, I decline to consider it at this time.

Nevertheless, it is clear that plaintiffs must provide a complying affidavit or have their case dismissed without prejudice.  *See* A.R.S. § 12-2603(F).  It has been more than a year since plaintiffs acknowledged this obligation and, apparently, approximately seven months since plaintiffs filed their disclosures.  The Court will dismiss this case without prejudice (and change the caption again) if plaintiffs do not file the required affidavit within 30 days after service of this order.

### B.  <u>Motion to Dismiss, Case 15-cv-2683-RBJ-MJW (Bryden), ECF No. 192</u>.

Edwin Bryden is the personal representative of the estate of his deceased wife, Pamela Bryden.  ECF No. 1 at ¶4 (in 15-cv-2683-RBJ-MJW).  Mrs. Bryden began receiving dialysis on December 8, 2011.  *Id.* at ¶63.  Plaintiff alleges that on the morning of January 28, 2012 Mrs. Bryden was treated with a GranuFlo dialysate in a DaVita clinic in California.  *Id.* at ¶¶64–65.

After she complained of chest pains, treatment was discontinued.  She was noted to have diminished breathing sounds, but she denied shortness of breath and was sent home.  *Id.* at ¶¶67–68.  That afternoon she presented to a local emergency room with complaints of chest pains and other symptoms and was noted to be in atrial fibrillation.  *Id.* at ¶69.  Plaintiff alleges that the atrial fibrillation resulted from the effects of defective GranuFlo dialysate.  *Id.* at ¶72.  Mrs. Bryden passed away on February 14, 2014 from cardiac arrest and coronary artery disease.  *Id.*

Mr. Bryden asserts seven claims: (1) fraudulent concealment; (2) negligence; (3) medical malpractice; (4) wrongful death; (5) loss of consortium; (6) violation of the California Consumers Legal Remedies Act; and (7) battery.  ECF No. 1 (in 15-cv-2683-RBJ-MJW).

DaVita moves for dismissal under Rule 12(b)(6) on grounds that (1) the claims are barred by the statute of limitations, in this instance a one-year statute established in California's Medical Injury Compensation Reform Act (sometimes referred to as "MICRA"); (2) the fraud allegations are not pleaded with particularity; and (3) DaVita had no duty to warn or disclose. ECF No. 192.  Plaintiff responds that the Medical Injury Compensation Reform Act only applies to negligence claims.  ECF No. 204 at 10.  Otherwise its positions are similar to those submitted in response to the *White* motion.  In its reply DaVita argues that the Act does apply to fraud claims.  ECF No. 208 at 15.  Otherwise its positions are similar to those in *White*.

1. Timeliness – Professional Negligence Claims.

The Medical Injury Compensation Reform Act, § 340.5, provides that

In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.  In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body,

which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.

The term "professional negligence," is defined to mean a

negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency.

I note two things of particular significance in this statute. First, it applies only to claims of professional negligence. It does not have a "misconduct" term like the Arizona statute discussed in the *White* case. I am not aware of a California case that has applied the statute to a fraud claim, but there is authority suggesting that fraud would not be included. *See, e.g., Unruh-Haxton v. Regents of University of California*, 76 Cal. Rptr. 3d 146, 157 (Cal. Ct. App. 2008) (in a case involving alleged thefts by doctors of human genetic material from patients receiving fertility treatments, the court held that the patients' claims for fraud, conversion, and intentional infliction of emotion distress were "related to wrongful intentional conduct, not negligence," and thus not subject to the Medical Injury Compensation Reform Act's statute of limitations).[3] Accordingly, I conclude that the Act applies to plaintiff's claims sounding in negligence, medical malpractice, wrongful death (to the extent based upon negligence), battery, and loss of consortium (again, to the extent based upon negligence), but not to the fraud claims.[4]

---

[3] DaVita points out that merely giving a defendant's actions the label "fraud" does not necessarily take the conduct outside the reach of the Medical Injury Compensation Reform Act. ECF No. 192 at 4. *See Prince v. Sutter Health Central*, 74 Cal. Rptr. 750, 755 (Cal. Ct. App. 2008). I agree, and I further agree that under either a negligence or a fraud theory, plaintiff's claims arise from the medical treatment she received from DaVita. Nevertheless, given the distinction I have made between the two theories, the wording of the Act, and the California case law I am citing, I conclude that the fraud claim is not covered by the Act.

[4] Asserting separate claims based on negligence, medical malpractice, wrongful death and battery appears to be superfluous, as they are different ways of asserting professional negligence. I include battery in this list because on the facts alleged it amounts to a failure to provide informed consent, not a claim that DaVita's physical contact with Mrs. Bryden was harmful or offensive as such. *See Cobbs v. Grant*, 502

A second difference from the Arizona statute is that in addition to the one-year statute of limitations there is what in substance is a three-year statute of repose. *See, e.g.*, *Roberts v. County of Los Angeles,* 96 Cal. Rptr. 3d 60, 65(Cal. Ct. App. 2009) ("MICRA's three-year statute functions as the outer limit"); *Belton v. Bowers Ambulance Service*, 86 Cal. Rptr. 2d 107, 109 (Cal. 1999) ("No tolling provision outside of MICRA can extend the three-year maximum time period that section 340.5 establishes."). That is a difference of importance to the California cases.

a. *Statute of Limitations.*

The one-year statute of limitations is based on the discovery rule. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly& Co.*, 751 P.2d 923, 927 (Cal. 1988). Mr. Bryden asserts that he and his wife learned of the dangers and risks associated with GranuFlo on August 28, 2012 through a commercial and working with counsel. ECF No. 1 (in 15-cv-2683-RBJ-MJW) at ¶77. If that is the date when the statute began to run, and if *American Pipe* tolling applies, then by my count the Complaint was filed on the 365th day and would not be barred by the statute of limitations. DaVita argues that the statute began to run earlier, and if so the statute of limitations would bar the suit. But that is a dispute of fact that is not appropriate for resolution on a motion to dismiss.

As for tolling, California courts have not applied *American Pipe* type tolling as have some other jurisdictions. *See, e.g.*, *Jolly*, 751 P.2d at 923, 933-37. Nevertheless, I believe that

---

P.2d 1, 8 (Cal. Ct. App. 1972). Mr. Bryden's loss of consortium claim is triggered by Mrs. Bryden's injury, so to the extent plaintiff establishes a claim based on professional negligence, the consortium claim is governed by the same statute. *See Leonard v. John Crane, Inc.*, 142 Cal. Rptr. 700, 703-704 (Cal. Ct. App. 2012). Professional negligence claims in California are subject not only to the limitations and repose provisions but all of the provisions of the Medical Injury Compensation Reform Act. *See, e.g.*, *Larson v. UHS of Rancho Springs, Inc.*, 179 Cal. Rptr. 3d 161, 168–70 (Cal. Ct. App. 2014).

on the facts of this case tolling would probably be granted.  The issue is not cross-jurisdiction

tolling, or as DaVita put it, whether California courts would toll state law claims based upon the

filing of a putative class action in federal court.  Rather, the issue is whether California courts

would hold that a purported class action for professional negligence would toll the running of the

statute of limitations established in the Medical Injury Compensation Reform Act as against a

member of the putative class who elects to file his own action in the same court after class

certification is denied.  Although *Jolly* is not directly on point, I conclude from it that California

state courts probably would toll the running of the limitations period in that circumstance.

Accordingly, the one-year statute either bars the Bryden claim or does not depending

upon the accrual date.

b.  *Statute of Repose.*

The statute of repose is a bigger hurdle.  Plaintiff has cited no law suggesting that

California appellate courts would apply *American Pipe*-type tolling to the three-year statute of

repose in the Medical Injury Compensation Reform Act, nor have I found any such authority.  I

conclude that it is unlikely that California courts would do so.

In *CTS Corp. v. Waldburger*, 134 S.Ct. 2175 (2014) the Court discussed differences

between statutes of limitation and statutes of repose.  Statutes of limitations create time limits

based on the date when the cause of action accrued.  They promote diligence on the part of

plaintiffs and protect defendants against stale claims.  *Id.* at 2182.  Statutes of repose run from

the date of the injury and put an outer limit on the right to sue.  They "effect a legislative

judgment that a defendant should be free from liability after the legislatively determined period

of time." *Id.* at 2183 (internal quotation marks omitted).  And, notably,

> One central distinction between statutes of limitations and statutes of repose
> underscores their differing purposes.  Statutes of limitation, but not statutes of

> repose, are subject to equitable tolling, a doctrine that pauses the running of, or
> 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but
> some extraordinary circumstance prevents him from bringing a timely action.
> Statutes of repose, on the other hand, generally may not be tolled, even in cases of
> extraordinary circumstances beyond a plaintiff's control.

*Id.* at 2183.

CTS did not concern *American Pipe* tolling, but its distinction between statutes of limitations and statutes of repose was one of the bases on which the Eleventh Circuit recently determined that *American Pipe* tolling does not apply to a statute of repose. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246–49 (11th Cir. 2016). At least two other federal circuits agree. *See Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 783 (6th Cir. 2016); *Police and Fire Retirement System of the City of Detroit v. IndyMac, Inc.*, 721 F. 3d 95, 109 (2d Cir. 2013). As I mentioned earlier, the Arizona Supreme Court reached the same conclusion. *Accord*, *Cacha v. Montaco, Inc.*, 554 S.E.2d 388, 392–93 (N.C. Ct. App. 2001).

Interestingly, the Tenth Circuit has held that *American Pipe* tolling does apply to statutes of repose. *Joseph v. Wiles*, 223 F.3d 1155, 1166–68 (10th Cir. 2000) (tolling the running of the three-year statute of repose under the Securities Act of 1933). It distinguished cases involving equitable tolling: "In contrast, the tolling Mr. Joseph claims is the legal tolling that occurs any time an action is commenced and class certification is pending." *Id.* at 1166–67. In fact, the court questioned whether *American Pipe* tolling is actually tolling: "Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve 'tolling' at all. Rather, Mr. Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied." *Id.* at 1168.

However, California law, not Tenth Circuit law, applies to the *Bryden* case. Given the Supreme Court's distinction of statutes of repose, the number of federal and state cases which

have declined to apply *American Pipe* tolling to statutes of repose, and the California Supreme

Court's discussion of *American Pipe* in the *Jolly* case, I conclude that California appellate courts

are more likely to embrace what has become the majority view.  Accordingly, the Bryden case is

not saved by *American Pipe* tolling.

All that is left with respect to the professional negligence claims is the limited tolling that

is statutorily built into the Medical Injury Compensation Reform Act's statute of repose itself:

Specifically, "[i]n no event shall the time for commencement of legal action exceed three years

unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3)

the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the

person of the injured person."  Plaintiff has alleged that DaVita intentionally concealed its

knowledge of the risks and dangers of GranuFlo and, thereby, committed fraud.  The motion to

dismiss is not the place to resolve whether plaintiff has a triable issue of intentional concealment.

Suffice it to say here that if the fraudulent concealment is not established the professional

negligence claims are barred by the statute of repose, regardless of the date on which the statute

of limitations began to run.

2.  Timeliness – Fraud Claims.

The period of limitation applicable to fraud claims is three years, but the claim does not

accrue until the aggrieved party discovers the facts constituting the fraud.  Cal. Code Civ. Proc. §

338(d).  The Consumers Legal Remedies Act (sometimes referred to as the "CLRA") is subject

to what I would consider to be a three-year statute of repose.  Cal. Civil Code § 1783 ("Any

action brought under the specific provisions of Section 1700 shall be commenced not more than

three years from the date of the commission of such method, act or practice.").  However, while

recognizing that "the limitations period begins to run on the date the improper consumer practice

was committed," at least some California courts have held that the "discovery rule tolls the statute of limitations for CLRA claims." *See Keegan v. American Honda Motor Co.*, 284 F.R.D. 504, 543 (C.D. Cal. 2012). *See also Massachusetts Mut. Life Ins. Co. v. Superior Court*, 119 Cal. Rptr. 2d 190, 199 (Cal. Ct. App. 2002) (the statute would "probably run from the time a reasonable person would have discovered the basis for a claim.").

Because the running of the period of limitation for both common law fraud and the CRLA claims is affected by the discovery rule, I conclude that the issues concerning the two claims cannot be resolved on the face of the pending motion to dismiss.

3. Particularity – Fraud Claims.

I implicitly determined in my ruling on DaVita's first motion to dismiss the first six cases plaintiffs had alleged fraud with sufficient particularity to survive a Rule 12(b)(6) motion. I repeat that ruling as it applies to the *Bryden* case. However, I note the obvious—those allegations will not be enough to survive a motion for summary judgment. Plaintiff will have to come forward with real, admissible evidence that is sufficient to create a genuine issue of fact as to whether DaVita intentionally concealed material adverse information about the risks of GranuFlo dialysate from the Brydens and others.

The Consumer Legal Remedies Act proscribes certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770. It creates a private right of action for consumes who suffer damage as the result of the use or employment of a proscribed practice. *Id.* § 1780. The Complaint does not specify by statutory section number the proscribed practices on which plaintiff relies. The factual allegations are substantively similar to the fraud allegations. Plaintiffs' counsel have essentially

used a cookie cutter model for their allegations in the six new cases and have cited what seems to be the counterpart of our local Colorado Consumer Protection Act in the states that have them.

Neither party cites any California law addressing whether the CLRA can be applied to representations or omissions made by a provider of health care to a patient concerning the actual treatment of the patient.[5]  I am skeptical and fail to understand what the statutory claim adds to plaintiff's arsenal that is not already available through the professional negligence and fraud claims.  Nevertheless, DaVita's argument is based on failure to state the claim with particularity. I will assume without deciding that the CLRA applies in circumstances such as those in this case. If there is sufficient particularity to support a fraud claim, as I have concluded, then there is sufficient particularity to keep this statutory claim alive for now.

   4. Duty to Warn or Disclose.

My analysis of this issue above in relation to the *White* case applies equally to the *Bryden* case and needs no further discussion.

   C. **Motion to Dismiss, Case 15-cv-2686-RBJ (Saldana), ECF No. 194.**

Gary Gene Saldana was treated with a GranuFlo dialysate in a DaVita clinic in Madera, California beginning shortly after noon on August 14, 2010.  Some 35 minutes later he was unresponsive, and was taken to a hospital, but was discharged on August 31, 2010.  On October 2, 2010, at the conclusion of another GranuFlo dialysate treatment at the same DaVita clinic, he was noted to have diminished respirations, tachycardia, and low blood pressure.  He was discharged but died at home in the early morning hours of October 3, 2010.  Plaintiff alleges that

---

[5] Plaintiffs' combined response states, "In sum, the California Plaintiffs' claims for fraudulent concealment, violation of the California Consumer Legal Remedies Act, and battery constitute intentional torts that do not fall within the purview of MICRA.  *Romar ex rel. Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, 583 F. Supp. 2d 1179, 1189 (E.D. Cal. 2008)."  ECF No. 204 at 24.  However, *Romar* did not mention the California Consumers Legal Remedies Act.

Mr. Saldana died from the effects of the GranuFlo, not from renal failure or other causes.  ECF No. 1 (in 15-cv-2686-RBJ) at ¶¶64–75.

Plaintiff alleges that she learned of the dangers and risks associated with GranuFlo until September 3, 2012 when she saw a commercial and called counsel to inquire about her rights.  This suit was filed on December 11, 2015 and was later consolidated with the other cases in this Court.

The same arguments, findings and conclusions that applied to the *Bryden* case apply to this case.  There is no reason to repeat them.

### D.  <u>Motion to Dismiss, Case 15-cv-2684-RBJ-NYW (Edwards), ECF No. 193</u>.

Tonda Edwards allegedly was treated with a GranuFlo Dialysate in a DaVita clinic in Austin, Texas on July 19, 2005.  Immediately after the treatment, and before she left the clinic, she suffered a cardiopulmonary arrest requiring CPR and defibrillation.  Emergency personnel found her in ventricular fibrillation.  She was hospitalized but died on July 23, 2005.  Plaintiff alleges that it was the GranuFlo, not renal failure or other conditions, that caused her death.  ECF No. 1 (in 15-cv-2684-RBJ-NYW) at ¶¶66–72.

Her daughter Carmelita Edwards filed this suit individually and as the personal representative of her mother's estate.  She alleges that neither she nor her mother knew of the dangers and risks of GranuFlo until Carmelita saw a commercial warning of the dangers on September 13, 2012 and contacted counsel to inquire about her potential rights as her mother's representative.  *Id.* at ¶77.  Her suit was filed on December 11, 2015.  It asserts claims sounding in (1) fraudulent concealment, (2) negligence, (3) medical malpractice, (4) wrongful death under a Texas statute, (5) wrongful death under California law, (6) loss of consortium, (7) violation of the Texas Deceptive Trade Practices-Consumer Protection Act, (8) violation of the California

Consumer Legal Remedies Act, and (9) battery.  The two California law claims were apparently asserted because DaVita was headquartered there at the time, but those claims have since been dropped.  Response, ECF No. 204, at 12.

DaVita argues that (1) plaintiff's claims are untimely under the applicable statutes of limitations and statute of repose; (2) the fraud claims are not cognizable under Texas law and, in any event, were not pled with particularity; and (3) DaVita had no duty to warn or disclose the purported risks of using GranuFlo.  I conclude that the statute of repose is dispositive of this case.

The Texas Medical Liability Act, sometimes referred to as the "TMLA," establishes both a statute of limitations and a statute of repose applicable to "health care liability claims":

> (a) Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided this section applies to all persons regardless of minority or other legal disability.

> (b) A claimant must bring a health care liability claim not later than 10 years after the date of the act or omission that gives rise to the claim.  This subsection is intended as a statute of repose so that all claims must be brought within 10 years or they are time barred.

Tex. Civ. Prac. & Rem. Code § 74.251.

The term "health care liability claim" means

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).

Thus, a health care liability claim "consists of three elements: (1) the defendant must be either a health care provider or a physician; (2) the plaintiff's claim must concern treatment, lack of treatment, or a departure from the accepted standards of care . . . ; and (3) the conduct complained of in element two proximately caused the plaintiff's injury or death." *East El Paso Physicians Med. Ctr. v. Vargas*, No. 08-13-00358-CV, 2014 WL 5794622, at *2 (Tex. App.—El Paso Nov. 7, 2014, pet. denied).

The term "health care provider" includes a "health care institution," which in turn includes "an end stage renal disease facility licensed under Section 251.011." *Id.* at §§ 74.001(a)(11)(K) and (12)(A)(vii). DaVita therefore is a health care provider. Plaintiff's claims concern dialysis treatment provided to Tonda Edwards by DaVita. Plaintiff contends that the treatment proximately caused Ms. Edwards' death. Thus, at a minimum, plaintiff's claims sounding in negligence, medical malpractice, wrongful death (resulting from negligence), and battery are health care liability claims. *See Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1432–33 (N.D. Tex. 1997).

Fraud claims are considered to be health care liability claims in Texas when the essence of the claim is that the plaintiff failed to receive proper medical treatment. *Id.* at 1433-34. The Court must "look not only to the pleadings but also to the underlying nature of the allegations." *Pallares v. Magic Valley Elec. Coop., Inc.*, 267 S.W.3d 67, 71 (Tex. App.—Corpus Christi 2008, pet. denied). A claim is a health care liability claim if the act or omission complained of is "an inseparable part of the rendition of medical services." *Id.*

*Porter* is an example of a fraud claim that was categorized as a health care liability claim. Plaintiff alleged that the health care facility misrepresented the plaintiff's need for treatment, the treatment alternatives, the capabilities of the facility's staff, the characteristics of the facility, and

the type of treatment that would be provided.  The court concluded, "[d]espite the fraud label plaintiff attaches to those claims, the fact is that all the claims are but ways of saying that plaintiff failed to receive proper medical treatment . . . and that [the facility] departed from accepted standards of health care, with the proximate result that plaintiff was injured."  957 F. Supp. at 1433.

    *Pallares* is an example of a fraud claim that was not considered to be a health care liability claim.  There, a health plan asserted a fraud claim against a physician based on a contention that the physician falsely represented an employee's condition to the plan, thereby inducing the plan to pay for unnecessary treatment.  On those facts the plan's claimed damages were viewed as being "merely tangential" to the treatment provided.  267 S.W. 2d. at 72.

    On the present facts I conclude that plaintiff's fraudulent concealment claim is a health care liability claim.  It is an alternative explanation for DaVita's alleged failure to provide proper medical care to Tonda Edwards.  The act or omission complained of was "an inseparable part of the rendition of medical services."  *Pallares*, 267 S.W.2d at 71.  For the same reason I conclude that the claim for violation of the Texas Deceptive Trade Practices-Consumer Protection Act is a health care liability claim.  In that claim plaintiff alleges that Tonda Edwards suffered injuries during and after her dialysis treatment "resulting from DaVita's concealment of the true dangerous nature of the products it administered" to her.  ECF No. 1 (in 15-cv-02684-RBJ-NYW) at ¶139.  The alleged concealments and misrepresentations were the largely the same as those alleged in the fraud claim.  *Compare* ECF No. 1 at ¶98 *with id.* at ¶137.

    And even if the fraud and the Deceptive Trade Practices-Consumer Protection Act claims were not health care liability claims, "the TMLA does not permit 'claim splitting.'"  *East El Paso Physicians Medical Center*, 2014 WL 4794622, at *2.  "Where all claims arise from the

same nucleus of operative fact, and some pleaded claims are [health care liability claims], then the TMLA's procedural requirements must be followed or else all claims arising from the same fact scenario must be dismissed." *Id.* (citing *Yamada v. Friend*, 335 S.W.3d 192, 195–92 (Tex. 2010)).

Accordingly, I conclude that all of the claims asserted by the plaintiff in this case, including the loss of consortium claim, are subject to the statute of repose applicable to health care liability claims. The act or omission that gave rise to these claims was DaVita's treatment of Tonda Edwards with a GranuFlo dialysate on July 19, 2005. Plaintiff's suit was filed on December 11, 2015, more than ten years later. Therefore, plaintiff's claims are barred by the statute of repose unless the running of the statute was tolled.

Unlike the California statute of repose, the Texas statute does not have its own tolling provision. Nor is it subject to "judicially crafted rules of tolling or deferral." *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010). Texas appellate courts probably recognize *American Pipe* type tolling with respect to statutes of limitation. *See, e.g.*, *Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App.— Houston [14th Dist.] 1987, no writ). But plaintiff cites no authority suggesting that Texas courts might apply *American Pipe* type tolling to a statute of repose. For the reasons discussed above concerning the *Bryden* case, I conclude that if and when Texas courts are faced with the question, they probably will agree with the majority view that such tolling does not apply to a statute of repose.

Accordingly, I conclude that plaintiff's claims are barred by the statute of repose in the Texas Medical Liability Act and do not reach or decide the other issues raised in the motion.

### E.  **Motion to Dismiss, Case 16cv834 (Menchaca), ECF No. 200.**

Irma Menchaca was treated with a GranuFlo dialysate in a DaVita clinic in Sacramento, California on January 12, 2008.  Her husband, who is the personal representative of her estate, alleges that approximately two hours after his wife's treatment he found her unresponsive in the kitchen.  Following resuscitation efforts and a one-month hospital stay, Mrs. Menchaca was discharged.  However, during treatment with a GranuFlo dialysate in the same DaVita clinic on June 6, 2008, Mrs. Menchaca died from cardiac arrest.  Plaintiff claims that her death resulted from the effects of the dialysate, not renal failure or other causes.  ECF No. 1 (in 16-cv-834-RBJ) at ¶¶64–72.

Mr. Menchaca alleges that his first awareness of the dangers associated with GranuFlo occurred on March 24, 2013 when a friend informed him about a commercial warning, and he then contacted counsel to inquire about his potential rights as his wife's representative.  The Thornton case had been filed 18 days earlier.  Plaintiff contends that the statute of limitations was therefore tolled through June 18, 2015.  His complaint was filed on April 12, 2016—less than a year after he claims to have discovered his cause of action.  Of course, the three-year statute of repose had long since expired by then, unless it was tolled under its own fraudulent concealment tolling provision.

As with *Saldana,* the arguments, findings and conclusions that applied to the *Bryden* case apply to this case.  There is no reason to repeat them.

### F.  **Motion to Dismiss, Case 16-cv-1676-RBJ (Hardin), ECF No. 215.**

Plaintiff alleges that Deborah Hardin was treated with a GranuFlo dialysate in a DaVita clinic in Chicago, Illinois on May 26, 2014.  When a nurse went to check the end time of her treatment Ms. Hardin was nonresponsive.  Following emergency procedures Ms. Hardin was

taken to a local hospital where she died that evening.  The death certificate lists the causes of

death as coronary artery disease, end stage renal disease, and peripheral vascular disease.  But

plaintiff alleges that her death was caused by the effects of GranuFlo rather than other causes.

ECF No. 1 (in 16-cv-1676-RBJ) at ¶¶64–71.

The plaintiff in this case is Frankquin Hardin who is Deborah Hardin's son who is

bringing the action on behalf of the estate of Deborah Hardin.[6]  He alleges that in August 2014

his sister (and Deborah's daughter) Joy White saw an advertisement warning of the dangers and

risks of GranuFlo.  Ms. White saw another advertisement in January 2016 and called counsel to

inquire about her and her siblings' potential rights as their mother's representatives.  *Id.* at ¶76.

Mr. Hardin filed this lawsuit individual and as personal representative of his mother's estate on

June 29, 2016.  He asserts seven claims: (1) fraudulent concealment; (2) negligence; (3) fraud;

(4) wrongful death (740 Ill. Comp. Stat. Ann. 180/0.01, *et seq.*); (5) medical malpractice; (6) loss

of consortium; and (7) violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq*.

In its motion to dismiss DaVita argues that (1) plaintiff's claims are untimely; (2) the

Illinois Consumer Fraud and Deceptive Practices Act does not apply to medical treatment; and

(3) DaVita had no duty to warn or disclose the risks of using GranuFlo.

1.  <u>Statute of Limitations</u>.

Defendant argues that the applicable statute of limitations is provided in the Illinois

Medical Malpractice Law.  In pertinent part the statute provides,

> Except as provided in Section 13-215 of this Act, no action for damages for injury
> or death against any physician, dentist, registered nurse or hospital duly licensed

---

[6] The Complaint purports to be brought by Mr. Hardin on behalf of himself and the estate.  *Id.* at 4.  It is
unclear, however, what claim he has other than as personal representative of the estate.  He does assert a
loss of consortium claim, but he claims that he and nine siblings all suffered a loss of consortium.
However, the other nine are not named as parties.

under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

Ill. Comp. Stat. Ann. § 5/13-212(a).

DaVita is implicitly asserting that it is a "hospital duly licensed under the laws of this State." Otherwise, the statute would not apply. *See Solich v. George and Anna Portes Cancer Prevention Center of Chicago, Inc.*, 630 N.E. 2d 820, 822–24 (Ill. 1994). Plaintiff apparently agrees because it does not dispute that statute and its limitations requirement applies. *See* Response, ECF No. 216, at 13 (p. 9 of plaintiff's numbering). I conclude that the Illinois Medical Malpractice Law does apply.

The statute on its face applies to injury and death claims "whether based upon tort, or breach of contract, *or otherwise*, arising out of patient care." (emphasis added). Accepting plaintiff's allegations of fact as true, it is clear that Ms. Hardin's death arose out of patient care provided by DaVita. Illinois courts construe this statute broadly to cover no more than a causal connection between the patient's medical care and the injury. *Brucker v. Mercola*, 886 N.E. 2d 306, 318-319 (Ill. 2007). Accordingly, I conclude that the statute provides the applicable period of limitations regardless of the legal theory asserted.

This case has a factual wrinkle not found in the other consolidated cases. On March 28, 2014—thus approximately two months before her death—Deborah Hardin filed a products liability lawsuit against Fresenius in the United States District Court for the District of Massachusetts. ECF No. 215-1 (for the date) and 215-2 (the Complaint). I take judicial notice of these facts which are matters of public record in the files of a federal district court.

In her Complaint in that case Ms. Hardin alleged that in January 2011, while undergoing dialysis at a Fresenius dialysis center, she went into cardiac arrest.  ECF No. 215-2 at ¶45.  She attributes her injury to the use of a GranuFlo dialysate during her treatment.  *Id.*  She traces in detail the history of GranuFlo beginning with Fresenius' initial application for FDA approval in 2003, Fresenius's developing awareness of increased risks of alkalosis associated with GranuFlo, an internal Fresenius memo dated November 4, 2011 concerning a study conducted in 2010 of patients who suffered cardiopulmonary arrest during treatment in a Fresenius dialysis center, Fresenius's initiation of a product recall in March 2012, and the FDA's notice to non-Fresenius clinics that were purchasing and using GranuFlo, including the notice of the recall, on March 29, 2012.  *Id.* at ¶¶11–39.  Ms. Hardin alleged that her exposure to GranuFlo caused the injury she sustained in January 2011.  *Id.* at ¶47.

Oddly, the Complaint against Fresenius alleges that Fresenius's failure to disclose the dangers of GranuFlo "prevented Plaintiff from knowing that the death of Deborah Hardin was potentially related to the use of the defective GranuFlo product until August 2012."  *Id.* at ¶48.  This, of course, makes no sense at all—Deborah Hardin was still alive when the Fresenius Complaint was filed.  Nor is there any indication of what occurred in August 2012 to put her on notice (this would have been nearly two years before the GranuFlo treatment of which plaintiff complains in the present case).  It appears likely that the Complaint was cobbled or adapted from some other complaint, and that counsel (not the same as plaintiff's counsel in the present case) did a lousy job of proofreading.  There is some danger in using cookie cutter complaints from case to case.

Regardless, it is evident that Ms. Hardin's lawyers in the Fresenius case were well aware of the alleged risks and dangers of GranuFlo-based dialysate at least by March 28, 2014.  As her

agents, this knowledge is attributable to Ms. Hardin.  Mr. Hardin makes a number of factual assertions in its response: that he was unaware that his mother had filed the Fresenius suit; that plaintiff's counsel have contacted Ms. Hardin's counsel in the Fresenius suit, but they could not explain the August 2012 date; and that plaintiff did not know that his mother received GranuFlo during her treatment at DaVita on May 26, 2014.  ECF No. 216 at 13–15.  However, those facts, if they are facts, go beyond the contours of his Complaint and are inappropriate for consideration on a motion to dismiss.  Moreover, an action brought on behalf of the estate of Deborah Hardin is as if Deborah Hardin herself were bringing the claim.  Her knowledge, not the estate's or the personal representative's knowledge, is at issue.  *Gale v. Williams*, 701 N.E.2d 808, 812 (Ill. App. Ct. 1998).

The Fresenius complaint is relevant to the determination of the "date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action." But that is an issue of fact inappropriate for resolution on the pending motion to dismiss.

In any event, it appears to be immaterial in the present case because of *American Pipe* tolling.  I agree with plaintiff that *Portwood v. Ford Motor Company*, 701 N.E. 2d 1102 (Ill. 1998) does not help DaVita.  That case, like the Arizona case discussed earlier in this order, concerned cross-jurisdictional tolling, holding that a purported class action filed in federal court in the District of Columbia did not toll the running of an Illinois statute of limitations.  *Id.* at 1103–05.  But the court also stated, "Tolling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system."  *Id.* at 1104.  That is what we have in the present case.

The parties have not addressed whether all of the present plaintiffs were members of the putative class. Donald Thornton purported to represent "[a]ll patients treated with GranuFlo or NaturaLyte at a DaVita clinic." ECF No. 1 at ¶68. Assuming the truth of the facts alleged in the Complaint, Deborah Hardin was treated with GranuFlo on May 26, 2014 and presumably became a member of the purported class. When she died, her place in the purported class presumably was taken by her estate. As such, under *American Pipe* tolling, the statute of limitations would have been tolled through September 18, 2015 when class certification was denied. This suit was filed approximately nine months later. In sum, the Court concludes that a Rule 12(b)(6) motion to dismiss the present action cannot be granted on the basis of the expiration of the statute of limitations.

2. <u>Fraud</u>.

I do, however, grant in large part the motion to dismiss the fraud claims. In the first claim, based upon fraudulent concealment, plaintiff alleges that DaVita concealed its knowledge of the dangers of GranuFlo, providing a litany of concealed facts including the November 2011 Fresenius memo, the FDA's notification regarding GranuFlo on March 29, 2012, and a Class I recall for GranuFlo issued by the FDA on June 27, 2012. ECF No. 1 (in case 16-cv-01676-RBJ) at ¶93. But we know from Deborah Hardin's complaint in the Fresenius case that her lawyers in that case were aware, and therefore she is deemed to have been aware, of these things before she received a GranuFlo dialysate treatment at the DaVita clinic on May 26, 2014. Facts cannot be concealed from a person who is already well aware of them. And, her knowledge is the estate's knowledge. *See Gale*, 701 N.E.2d at 812.

Similarly, in the repetitive third claim plaintiff alleges that DaVita concealed material facts concerning GranuFlo from the decedent. Not possible. I acknowledge that the fraud claim

that I have not dismissed in other consolidated cases includes the allegation that DaVita was aware through its own monitoring of patients of the risks associated with GranuFlo but concealed that knowledge from the various plaintiffs.  However, that concealment, if it occurred, is immaterial in view of Ms. Hardin's well developed knowledge of the risks.

The only alleged common law fraud that has possible merit in the *Hardin* case is the allegation, construing the Complaint in plaintiff's favor, that DaVita concealed from Deborah Hardin and her prescribing physician that it was using GranuFlo in her treatment.  ECF No. 1 at ¶73.  Even if true, that is a slender reed on which a fraud claim could be based.  Given her extensive knowledge of GranuFlo's alleged risks and dangers, one would think that she would have done something to avoid a repeated exposure to GranuFlo, such as informing her doctor and DaVita that she did not want to be treated with a GranuFlo dialysate.  But that is an issue for another day, not one to be resolved on the pending motion to dismiss.

The Illinois Consumer Fraud and Deceptive Business Practices Act would be subject to the same limitations if it applied at all in this case.  However, I conclude that it does not.  Under Illinois law, the medical profession is exempt from that act to the extent that the complained-of actions are subject to other law uniquely applicable to the profession such as the body of law on medical malpractice.  *See Gadson, M.D. v. Newman*, 807 F. Supp. 1412, 1417–18 (C.D. Ill. 1992).  This case does not arise out of the business of running a clinic but out of the provision of medical care.  Accordingly, I grant the motion to dismiss the seventh claim.

3. <u>Duty to warn or disclose.</u>

My analysis of DaVita's third argument is the same as in the previous cases, and I will

not dwell on it further.  However, it is largely moot in this case due to Deborah Hardin's prior

knowledge of the risks and dangers of GranuFlo.

**V.      Motion to Reschedule the Trial Date and Amend the Caption.**

DaVita asks the Court to re-caption the case in recognition of the fact that the *Thornton*

case as well as the other five 2013 cases have been dismissed.  ECF No. 219.  Plaintiffs do not

oppose that request.  *See* ECF No. 220.  I agree.  The lead case henceforth will be No. 15-cv-

02106-RBJ, *Kathleen and Trevor White v. DaVita Healthcare Partners, Inc.*  Cases 15-CV-

02683-RBJ-MJW (*Bryden*), 15-cv-2686-RBJ (*Saldana*), 16-cv-00834-RBJ (*Menchaca*), and 16-

cv-01676-RBJ (*Hardin*) remain consolidated with 15-cv-02106.

DaVita also requests that the present trial date be vacated, and that the trial be reset to

commence on December 4, 2017.  DaVita points out that, although the first six cases were filed

three years ago, the six (now five) remaining cases were filed more recently.  In addition DaVita

asserts that plaintiffs (1) have not provided complete medical record authorizations, (2) have not

indicated how many additional actions will be filed, (3) have refused to agree on a finalized

document custodian list, (4) have not responded to deficiencies in discovery responses, and (5)

have not responded to DaVita's search term list.  ECF No. 219 at 2.  As a result, "additional time

is necessary to permit the parties to complete discovery and prepare for trial despite DaVita's

diligence." *Id.* at 3.

In response plaintiffs report that they will not be filing any additional cases.  ECF No.

220 at 2.  They state that the medical releases issue has been resolved, that DaVita has

mischaracterized the other discovery disputes, and that those disputes have not prejudiced any party's ability to prepare for trial. *Id.* at 2-3. Plaintiffs also assert that DaVita has failed to provide documents pursuant to subpoenas plaintiffs issued in June 2016, and plaintiffs are awaiting that production before taking depositions of DaVita's medical directors and plaintiffs' treating physicians. *Id.* at 3. Nevertheless, although plaintiffs do not feel that a continuance of the trial is necessary, they do not oppose DaVita's request. *Id.* at 2.

The Court does not understand the need for a continuance. The remaining five cases will be between 11 and 19 months old by the trial date, and the basic issues are similar to those raised in the first six cases. Neither party has brought their discovery disputes to the Court for resolution. Further, I'm not sure plaintiffs appreciate the effect of a continuance on their clients. Among other things, it is generally true that the pressure of an impending trial date tends to be a motivator to consider settlement.

Nevertheless, although I would not have continued the trial over objection, I will accede to DaVita's unopposed request. The trial date is vacated. For a new schedule, see below.

## VI.   Order

1. Defendant's motion to dismiss the *White* case, filed as ECF No. 195 in Case No. 13-cv-00573-RBJ-KMT, is GRANTED IN PART and DENIED IN PART. Plaintiff's' first, third and fifth claims are dismissed. The second, fourth and sixth claims are not dismissed.

2. Defendant's motion to dismiss the *Bryden* case, filed as ECF No. 192 in Case No. 13-cv-00573-RBJ-KMT, is DENIED.

3. Defendant's motion to dismiss the *Saldana* case, filed as ECF No. 194 in in Case No. 13-cv-00573-RBJ-KMT, is DENIED.

4. Defendant's motion to dismiss the *Edwards* case, filed as ECF No. 193 in Case No. 13-cv-00573-RBJ-KMT, is GRANTED.  Case No. 15-cv-2684-RBJ-NYW is dismissed with prejudice.

5. Defendant's motion to dismiss the *Menchaca* case, filed as ECF No. 200 in Case No. 13-cv-00573-RBJ-KMT, is DENIED.

6. Defendant's motion to dismiss the *Hardin* case, filed as ECF No. 215 in Case No. 13-cv-00573-RBJ-KMT, is GRANTED IN PART and DENIED IN PART.  It is granted as to plaintiff's seventh claim which is based on the Illinois Consumer Fraud and Deceptive Business Practices Act.  The motion is also granted as to plaintiff's first and third claims except to the extent that plaintiff claims that DaVita fraudulently concealed from Deborah Hardin and her physician that she would be treated with a GranuFlo dialysate.  The motion is otherwise denied.

7. Defendant's motion to amend the caption and for a continuance of the trial date, filed as ECF No. 219 in Case No. 13-cv-00573-RBJ-KMT, is GRANTED.  The lead case henceforth will be *Kathleen White and Trevor White v. DaVita Healthcare Partners, Inc.*, 15-cv-2106-RBJ, and the consolidated cases may collectively be referred to as *White, et al. v. DaVita Healthcare Partners, Inc.*  The trial date of May 8, 2017 is vacated.

8. The Court adopts the Proposed Civil Scheduling Order as its Amended Scheduling Order, including the new trial preparation conference date (November 17, 2017 at 9:00 a.m.) and trial date (December 4, 2017) with the following exceptions:

- The discovery cutoff for all non-expert and expert discovery will be June 16, 2017.

- No later than June 23, 2017 plaintiffs will inform DaVita and the Court which of their claims they continue to assert and briefly describe the good faith basis in fact and law for continuing to assert each such claim.

- No later than June 30, 2017 DaVita will advise plaintiffs and the Court which affirmative defenses it continues to assert and provide a description of the good faith basis in fact and law for continuing to assert the affirmative defense.

- If either party wishes to file a motion for summary judgment or partial summary judgment, they will first file, no later than July 7, 2017, a paper not to exceed three pages (including caption and certificate of service; no small Roman Numerals please) briefly explaining (1) why the party believes that there are no genuine issues of material fact that preclude summary disposition, and (2) what issues of law it would rely upon that have not previously been addressed and decided by the Court.  The opposing party may file a response, not to exceed three pages, no later than July 14, 2017.

- The Court will then advise the parties whether it will entertain a dispositive motion and, if so, the specific issues that may be addressed.  The dispositive motions deadline will be July 28, 2017.

- Finally, if the case is proceeding to trial, the Court directs the parties to submit by email to Chambers one week before the trial preparation conference their proposed jury instructions after first meeting, conferring and using their best efforts to reach agreement on instructions.

DATED this 13th day of December, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge